Duncan J.
The act regulating arbitrations of the 20th. March, 1810, 5 Sm. L. 189, prescribes the form of a recognisance, the condition of which is, when entered into by the defendant, that if the plaintiff in the suit shall obtain a judgment as or more favourable than the repQrt of the arbitrators, the defendant shall pay the costs that may accrue in consequence of such appeal, together with the sum or value of the property or thing awarded, with one dollar per day for each and every day that shall be lost by the plaintiff in attending to such appeal.
Two objections are made to this recognisance. First, that it omits the part of the condition respecting the value of the property or thing awarded, and secondly, that it adds the word necessarily, to the attendance of the plaintiff on the appeal. This was an action of debt for a sum of money; the award was for a sum of money. To pay the sum awarded was in such case the proper form. The words, “ or value of the thing or property awarded,” relate to suits brought to recover the value of some property, of the violation of the right to which, the plaintiff complains. The recognisance to meet that case naturally requires, that the words, “ or the value of the thing or property awarded,” should be inserted. The clause is in the disjunctive, and is to be construed with reference to the nature of the action, whether for money, or for the value of the thing or property awarded'; '
*264 The word “ necessarily,” is implied by the law. Thé appellee is only entitled to an allowance for the time he necessarily attended, and the Court in taxing the bill of costs, would ascertain what time he did necessarily attend.
This recognisance being in direct conformity to the act, it is deemed unnecessary to give an opinion how far the acts of the plaintiff in going on to trial, would amount to a waver of irregularity in entering the appeal. The subsequent proceedings never can be considered as a mere nullity; an usurpation of jurisdiction by the Court of Common Pleas; for after an award filed, and judgment rendered, if such award is defective in its form, the Court has jurisdiction over it, and can set it aside.
But the objection to the verdict is more substantial. It has been endeavoured to answer it by contending, that after the general finding of one hundred and fifty dollars, with six cents damages and six cents costs, all that follows is surplusage and ought to be rejected, and if this be not so, then, that the verdict is sanctioned by the powers necessarily inherent in juries, from a want of a court of chancery in Pennsylvania, to grant relief on equitable terms. To consider this surplusage and reject it, would not be moulding a verdict according to the justice of the case, and the intention of the jury. It would be contrary to their intention and manifestly unjust; for if this verdict were to remain as a naked verdict for one hundred and fifty dollars, the defendant could compel the execution of the contract in ejectment, on the trial of which this verdict would be conclusive on Witman, as to the thousand dollars; that it had been paid and satisfied. It must be considered as a special finding; a special decree of the jury, rescinding the contract on terms not made by the parties, but by the jury.'
Much has been said, with regard to the powers of a court of equity, and the power of juries in Pennsylvania. But a court of chancery have no more power than a court of law, to absolve parties from their contracts. Courts of chancery may remain neuter, when there are such circumstances attending the transaction, as to shew that it would be iniquitous to compel a specific execution ; as fraud, misrepresentation, gross inequality or inadequacy, such as would shew - from its own extravagance, an imposition, an undue advantage, suppressio veri, or suggestio falsi, or where the title is *265 defective, or the party discovered a backwardness. Mills v. Edwards, 1 Vern. 159. It is believed, that where the agreement is binding in law, and none of the circumstances stated exist, chancery never has refused to compel a specific execution. Where the terms of the contract are doubtful, or where there is a prior agreement to convey land, chancery has referred the matter to a court of law, to be considered, whether damages could be there recovered, and then the chancellor will be governed by the result, for chancery cannot contradict or .overturn the grounds and principles of law. Chancery cannot dissolve a legal contract, on terms. This Court cannot say to a party who repents of his contract, we will let you off on terms ; for if the contracting parties stipulate for such event, and insert in a contract for sale, that if either party break the agreement, he shall pay a sum of money to the other, this will only be considered in the nature of a penalty, and consequently a specific performance will be decreed in the same Planner as if no such provision had been inserted; and although the defendant may wish to forfeit the penalty, yet a specific performance will be decreed. Howard v. Hopkins, 2 Atk. 371. Sugd. 155. It would be otherwise where the sum was fixed by the parties as stipulated damages for nonperformance. These I consider to be binding rules in equity; The discretion vested in that Court is not unlimited, precarious, or undefined. That discretion is a science not to act arbitrarily according to men’s wills and private affections, but is to be governed by the rules of law and equity, which are not to oppose, but each in ifs turn to become subservient to the other. In some case's this discretion follows the law, in others it relieves against its abuse or allays its rigour, but in no case does it contradict or overturn the grounds and principles thereof, as some have ignorantly imputed to it. That is a discretionary power which neither this nor any other Court, nor even the highest, acting in a judicial capacity, is by the constitution intrusted with. By Sir J. Jekyll, master of the rolls, in Cowper v. Cowper,2 P. Wms. 753. Discretion without rule ceases to be law, and becomes a most dangerous and tremendous power. When applied to a court of justice,-it means a sound discretion guided by law; it must be governed by rule and not by humour; it must not be arbitrary, vague and fanciful, but legal and regular. Rex v. Wilkes, 3 Burr. 2539.
*266 Principles of decisions adopted by equity, when fully established and made the ground of subsequent decisions, are considered by these Courts as rules to be observed with as much strictness as positive law. Mitf. C'h. 4. And in cases of fraud, which from their nature, must be almost infinitely various in their circumstances, courts of equity constantly proceed upon some clear and established principle, sufficiently comprehensive to meet the circumstances of the particular case to which it is applied, and not upon any vague, arbitrary, and indefinite power, which in its exercise might indeed prove mischievous to the individual, and alarming to the state. 1 Forth. 24. To leave all rules of property to the reason of those who are to decide is, however in theory excellent, in practice is dangerous. No man who is not a lawyer, would know how to act, and no man who is a lawyer would know how to advise, unless all judicial tribunals were bound by authority, yones on Bail, 46.
It is not the law of Pennsylvania, that juries may exercise, without the controul of the Court, all equitable powers, without regard to any rule, according to their own reason and discretion, in every particular case. Instead of being decisions of the law, they would be arbitrary decrees in the nature of awards, suddenly made pro hac vice. If this were the case, there is no intelligent man but must discover the consequences. In every Court, for every Term, there would be as many chancellors, as there were jurors drawn from the box. How unequal would be the distribution of justice ? There would cease to be any common rule in law; as many different rules would prevail as there are counties in the state, and even in the same Court the rule would be fluctuating. But to this reproach the administration of justice in Pennsylvania is not subject; for though there are difficulties to encounter in the exercise of chancery powers in courts of common law, conflicting and various interests, difficult to adjust, because there are no means of bringing all the parties before the Court, yet in the exercise of these equitable powers, Courts and juries are as much bound by equitable rules as by the positive precepts of the law. The ascertainment of the facts on which the equity of the Court is called on to interpose, must be decided by the jury, but the mode, manner, and extent of the relief, are questions of law to be decided by the Court; thus preserving the line of distinction *267 between the pi-ovince of the Court and that of the jury. Chief Justice Shippen, in Shewell v. Fell, 3 Teates, 21, observes, that it is the province of the Court to judge in whát cases the rules of the English common law should be relaxed. Should juries assume this power, the necessary consequence would be, that the utmost uncertainty must ensue from the fluctuating opinions of different sets of jurors in different counties. This opinion, proceeding from a Judge of great experience, and who must have observed, from a very early period, the progress of the exercise of equity powers in our-courts of common law, is of great authority, and was sanctioned by the opinion of the whole Court.
One great object of society is, a power to enforce the performance of contracts. This is the chief business of courts of civil jurisdiction. So important is this deemed, that the framers of the constitution of the United States and of this state, have prohibited the legislature from passing any laws, impairing the obligation of contracts. It would be inconsistent to suppose, that this power, which was prohibited to the legislature, should be vested, in every contract, in twelve men chosen by lot.
When chancery interposes, it sets aside the contract, because it is infected with some of the ingredients before stated. It considers the contract as not binding, but it never makes a new contract, nor lets the party off on paying a compensation for the violation of a binding contract, fair and equal, and which does not stand impeached in any way.
It is admitted, however, that juries may, under particular circumstances of hardship, inequality, and oppression, find a very small sum in damages, and that chancery would not carry a contract so obtained into specific execution. If this had been a general verdict for one hundred and fifty dollars, this Court would not have reversed it, as they have no power to grant a new trial; but, I consider this finding of the jury in the nature of a special verdict, or equitable decree, by which it may be inferred, that the contract itself stood unimpeached, and that the jury dissolved the contract, and let the party off from a bargain' of which he had repented, on paying one hundred and fifty dollars composition money. On such special verdict the Court could not give judgment to carry it into effect and execution; and if there were any facts which would shew, that such circumstances attended the *268 transaction, as that it would be against the rules of equity to carry it into effect, these facts ought to have been found, and therefore, the verdict is imperfect. . I am, therefore, of opinion, that the judgment should be reversed, and a venire facias de novo awarded.
Judgment reversed, and a venire facias de novo awarded.